CIVIL ACTION NO. 10-51-DLB

RICHARD WESLEY                                                                 PLAINTIFF

vs.                            MEMORANDUM OPINION AND ORDER

ALISON CAMPBELL, ET AL.                                                  DEFENDANTS

*    *    *    *    *    *    *

Plaintiff Richard Wesley, a former employee of the Covington Independent School District, commenced this § 1983 action against the Kentucky Cabinet for Health & Family Services (the "Cabinet"), Alison Campbell, a social worker employed by the Cabinet, Joanne Rigney, a detective for the Covington Police Department, and Anthony Ross, the Principal of the elementary school where Mr. Wesley used to work, alleging wrongful arrest and violations of his procedural due process rights under the Fourteenth Amendment after he was terminated in March of last year. Plaintiff also advances several tort claims arising under state law, including intentional infliction of emotional distress. Defendants Campbell, Ross, and the Cabinet seek dismissal on all counts. Defendant Rigney answered Plaintiff's Complaint and did not file a motion to dismiss.

The matter is before the Court on Defendants Campbell and the Cabinet's Joint Motion to Dismiss (Doc. # 5), Defendant Ross' Motion to Dismiss (Docs. # 10 & 11), and Plaintiff's Motion to File an Amended Complaint (Doc. # 12). Oral Argument was held on July 15, 2010. Paul J. Hill appeared on behalf of the Plaintiff, and Mary Ann Stewart and Suzanne Cassidy appeared on behalf of Defendant Ross. Counsel for the Cabinet, Brent

Irvin, did not appear and advised chambers' staff he would submit his motion on the briefs. The matter is now ripe for review. For the reasons set forth below, because Plaintiff failed to plead factual allegations sufficient to state a federal due process claim, and state law claims of negligent investigation and outrage, and because amendment would be futile, both Defendants Campbell and the Cabinet's motion to dismiss (Doc. # 5), and Defendant Ross' motion to dismiss (Docs. # 10 & 11) are **GRANTED**; and Plaintiff's motion to file an amended complaint (Doc. # 12) is **DENIED** on futility grounds.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts, which have been gleaned solely from Plaintiff's Complaint, are accepted as true for purposes of addressing Defendants' motions to dismiss. *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005). This case has its genesis in a seven-year-old's sexual abuse allegation against his school guidance counselor. After the allegation was reported, Plaintiff Richard Wesley was placed on paid administrative leave and ultimately terminated from his position as children's counselor at the 6th District Elementary School in Covington ("6th District"). Plaintiff then filed suit against the principal of the school, the social worker and detective who investigated the allegation, and the Cabinet for Health and Family Services claiming that the allegation was negligently investigated in violation of federal and state law.

Wesley was hired to work at the 6th District in December 2007 on a part-time basis, and was hired on full-time for the 2008-2009 academic year. Plaintiff's position required that he interact closely with students ranging from pre-K through the 5th grade to assist with any problems the students were facing at or outside of school. Mr. Wesley alleges that

2

on February 5, 2009, one of his students at the 6th District falsely accused him of sexual molestation, which ultimately resulted in his termination.

On February 5, 2009, J.S., a seven-year-old boy, disclosed either to his mother or to Defendant Campbell,[1] a social worker employed with the Cabinet, that Plaintiff had fondled J.S.' penis. Principal Ross was made aware of the allegation, and Wesley was immediately placed on administrative leave pursuant to the school's "standard procedure." Campbell and Detective Rigney interviewed J.S. at the Children's Advocacy Center ("CAC") on February 11, 2009, where J.S. alleged that over a one-year period Plaintiff anally sodomized him while in his office during school hours.

Plaintiff alleges that on March 19, 2009, Alison Campbell wrote a "Substantiated Investigation Notification Letter," which was mailed to Plaintiff, Principal Ross, and Kentucky's Education Professional Standards Board. The letter included the information that J.S. accused Wesley of fondling his penis and anally sodomizing him on multiple occasions over a one-year period. Plaintiff alleges it was a violation of Defendant Campbell's duty as a social worker not to interview him as the alleged perpetrator of the abuse and give him an opportunity to "proclaim his innocence." (Doc. #1, ¶ 98). In failing to interview him, Plaintiff claims he has suffered "physical and psychological, and emotional injuries of a temporary and permanent nature." (Doc. #1, ¶ 102).

The Executive Director of Personnel and Administration of the Covington Independent Public Schools, Ken Ellis, sent Plaintiff a letter on March 25, 2009, via certified mail, terminating Plaintiff effective March 23, 2009, for misconduct. The letter stated that

---

[1]It is unclear from the record whether the information was first disclosed to J.S.' mother or to Defendant Campbell. (Compl. ¶ 31).

based on Child Protection Services' Substantiated Investigative Notification Letter, the superintendent's decision was to terminate Plaintiff. On April 30, 2009, however, the Covington Independent Schools' superintendent sent Plaintiff a letter claiming that a "reduction in funding" necessitated his termination as counselor at the 6th District.

On April 30, 2009, Plaintiff was criminally charged, arrested, and taken into custody. His criminal case was ultimately dismissed after a Kenton County Grand Jury determined that the case lacked probable cause for an indictment. However, as a result of J.S.' accusations, Plaintiff claims he has not worked since the initial accusation in February 2009, has been diagnosed with Post Traumatic Stress Disorder ("PTSD"), and cannot be around young children. He alleges further that he has incurred thousands of dollars in medical expenses for his ongoing psychological treatment.

In essence, Plaintiff is claiming the investigation of the abuse allegations against him violated his constitutional rights. He contends that had Campbell and Rigney–and those supervising them–conducted a more thorough investigation, he never would have been criminally charged, arrested, and fired. For example, he believes that Campbell was reckless in believing a seven-year-old boy's abuse allegation, since J.S. had a history of hospitalization for psychological and emotional treatment. Moreover, had Campbell or Rigney interviewed employees at the 6th District they would have learned that "[i]t would have been literally impossible for the act of sodomy to have taken place...in Plaintiff's office due to the close proximity of other school employees." (Doc. #1, ¶¶ 46, 51, 59).

Defendants Campbell, Ross, and the Cabinet have moved to dismiss the Complaint, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. They claim this

4

Court lacks jurisdiction to assess damages against them in their official capacities and that insufficient claims are made against them in their individual capacities. Against the State Defendants (i.e. the Cabinet and Alison Campbell in her official capacity ), Plaintiff asserts the following: (1) a Fourteenth Amendment procedural due process claim, premised on the Cabinet's substantiated finding of abuse (Count II); (2) an alleged violation of a state administrative regulation (Count III); (3) a § 1983 claim for negligent training and supervision (Count IV);[2] (4) a supplemental state law tort claim for negligent investigation (Count V); and (5) a supplemental state law claim for outrageous conduct (i.e. intentional infliction of emotional distress) (Count VII). Against Defendant Ross, Plaintiff asserts supplemental state law claim of unlawful dissemination in violation of K.R.S. § 620.050(5) (Count VI) and for outrageous conduct (Count VII).

Pending before the Court are motions to dismiss filed by the Cabinet and Alison Campbell in her official capacity as well as by Principal Anthony Ross in both his individual and official capacity. In response, Plaintiff has stipulated to the dismissal of the Cabinet, and both official capacity claims against Campbell and Ross on the basis of sovereign and governmental immunity, but asserts the individual capacity claims against the two must

---

[2]State Defendants characterize Plaintiff's claim for negligent training and supervision as a supplemental state law tort claim. It is unclear from the Complaint, however, whether Plaintiff is asserting a federal constitutional claim based on negligent training and supervision or a state law claim for the same. Plaintiff asserts "the policies employed by the Cabinet, and the training and supervision of its employees, constitute a policy and custom that encourages the use of methods of investigation that are so substandard they are likely to depriv[e] individuals such as the Plaintiff of their constitutional right of due process of law." (Compl. ¶ 103). As such, despite Defendants' characterization of the claim as a tort arising under state law, the Court construes Plaintiff's claim in Count IV as a § 1983 claim for negligent training and supervision against the Cabinet.

Even if construed as a state law claim for negligent training and supervision, Plaintiff's claim would be subject to dismissal as he did not follow the appropriate administrative procedure for bringing a negligence claim against the Cabinet. All claims of negligence against "the Commonwealth, its agencies, and its employees" must be brought in the Board of Claims. *Grayson County Bd. of Educ. v. Casey*, 157 S.W.3d 201, 205 (Ky. 2005).

proceed.

## II.     ANALYSIS

### A.     Motions to Dismiss

#### 1.     Standard of Review

Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In reviewing a Rule 12(b)(6) motion to dismiss, this Court "must construe the complaint in a light most favorable to the plaintiff, and accept all of [his] factual allegations as true.  When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citations omitted).  The Court, however, is not bound to accept as true unwarranted factual inferences, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), or legal conclusions unsupported by well-pleaded facts.  *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 950 (6th Cir. 1990).

To survive a motion to dismiss, the complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, but it must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  To satisfy this standard, the complaint must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

## 2.	Dismissal on the Merits is Warranted

The Sixth Circuit has not explicitly decided whether a court *must* or *may* resolve a sovereign immunity defense before addressing the merits of a claim.  *Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 477 (6th Cir. 2006) ("We leave for another day the question of whether a federal court must decide the immunity question before the merits when a State raises it as a threshold defense.").  Despite the lack of precedent clearly deciding this issue, the trend favors granting federal courts discretion to first address immunity issues or address the merits.  In *Nair*, the Sixth Circuit specifically concluded that where state defendants decline to raise sovereign immunity as a threshold defense "federal courts have discretion to address the sovereign-immunity defense and the merits in whichever order they prefer."  *Id.*

Here, moving Defendants have raised sovereign immunity only as an alternative ground for rejecting Wesley's claims.  In its discretion the Court will proceed with adjudication on the merits–as Defendants have urged–as it would permit prompt resolution of the instant action, however, recognizing that the Cabinet as well as Defendants Campbell and Ross in their official capacities are immune from suit based on sovereign immunity.[3]

---

[3]The Kentucky Cabinet for Health and Family Services is protected from suit in federal court based on sovereign immunity provided by the Eleventh Amendment to the United States Constitution. *Akers v. Alvey*, 338 F.3d 491, 497 (6th Cir. 2003); *see also Grider Drug LLC v. Kentucky*, No. 3:08-77, 2009 WL 1044935, at *2 (E.D. Ky. April 20, 2009).  Clearly established precedent dictates that "a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."  *Quern v. Jordan*, 440 U.S. 332, 337 (1979)).  This jurisdictional bar extends further to state officials in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  "The Eleventh Amendment therefore bars § 1983 actions against a state, its agencies, and its officials sued in their *official capacities for damages*." *Cady v. Arenac County*, 574 F.3d 334, 342 (6th Cir. 2009) (emphasis added).  Consequently, Plaintiff's suit against the Cabinet and Alison Campbell, in her official capacity, presents a jurisdictional bar to suit in federal court.  *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993).

### 3.    Claims Against the State Defendants are Subject to Dismissal

In Count II[4] of the Complaint, Plaintiff alleges a procedural due process claim against the Cabinet and Defendant Campbell premised on the Cabinet's substantiated finding of abuse, which led to Plaintiff's eventual termination from the Covington Independent School District.   The Due Process Clause prohibits any state from depriving a person of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  To state a claim under § 1983, a plaintiff must establish both that the defendant acted under color of state law and that the defendant deprived him a federal statutory or constitutional right.  *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992).  Against the Cabinet and Campbell, however, Plaintiff fails to state a viable due process claim.

Initially, it is important to note that Plaintiff concedes the Cabinet and Defendant Campbell, in her official capacity, should be dismissed on the basis of sovereign immunity. (Doc. #13, at 1, 5).  The Court agrees, observing further that notwithstanding the doctrine of sovereign immunity, the claims against the Cabinet and Defendant Campbell must be dismissed on the merits.

### (I)    Plaintiff does not have a cognizable property interest in his job at the 6th District

To establish a claim for deprivation of a property interest without due process of law, Plaintiff must show that he had a property interest in continued employment with the 6th District.  *Brown v. City of Niota*, 214 F.3d 718, 720 (6th Cir. 2000).  The inquiry into "what

---

[4]Plaintiff has characterized his claim under Count II as a violation of 42 U.S.C. § 1983.  Section 1983, however, is not a source of substantive rights, it is merely the vehicle by which Plaintiff may assert his constitutional claims.  *Mt. Elliott Cemetary Ass'n v. City of Troy*, 171 F.3d 398, 400 n.1 (6 th Cir. 1999) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Plaintiff's claim is properly characterized, therefore, as a violation of his procedural due process rights guaranteed under the Fourteenth Amendment.

process is due" is relevant only if Plaintiff can first establish that constitutionally protected interest. *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005); *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997) ("Absent a property interest in [his] position ...[Plaintiff] was not entitled to any pre-deprivation process whatsoever.").

Entitlement to a property interest is determined by reference to state law. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Ludwig v. Bd. of Trustees*, 123 F.3d 404, 409 (6th Cir. 1997). A property interest is created by statute or regulation, a formal contract, or a contract implied from the surrounding circumstances. *Ludwig*, 123 F.3d at 409. Although state law establishes the underlying substantive interest the plaintiff seeks to defend, "federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause.'" *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978) (citing *Roth*, 408 U.S. at 577).

Plaintiff asserts he has a protected property interest in his position as counselor at 6th District, which at oral argument he admitted was not a tenured position. As originally hired in 2007, Plaintiff was a part-time employee with 6th District. He was hired on full-time for the 2008-2009 academic year, and was later told by Principal Ross that he would be hired in a full-time capacity for the 2009-2010 academic year. (Compl. ¶ 10).

In Kentucky, a classified employee with four years of continuous service under K.R.S. § 161.011 has a protected property interest in that employment. *Branham v. May*, 428 F. Supp. 2d 668, 673 (E.D. Ky. 2006). Moreover, pursuant to subsection (7) of the same statute, a school district's superintendent has ultimate authority to terminate a classified employee for "incompetency, neglect of duty, insubordination, inefficiency, *misconduct*, immorality, or other reasonable grounds which are specifically contained in

board policy." K.R.S. § 161.011(7) (emphasis added). Despite his status as a classified employee, Plaintiff is not entitled to the protection offered under K.R.S. § 161.011 because he falls short of the requisite four years of continuous service to establish a protectable property interest in his position at 6th District. Including his employment as a part-time employee, Plaintiff only accumulated, at most, two and a half years of continuous service beginning in 2007 and ending in 2009.

Despite Plaintiff's inability to claim a protectable property interest conferred by statute, such an interest may be conferred via contract. Under Kentucky law, unless the parties specifically manifest an intention to condition termination pursuant to express terms, employment is considered at will. *Bailey*, 106 F.3d at 141. An at-will employee is subject to termination at any time without cause. *Id.* As such, an at-will employee cannot properly claim a protectable property interest in his job. *Id.* Plaintiff made clear at oral argument that he is unsure whether he had a written employment contract with 6th District. He does allege, however, that Principal Ross made an oral representation that he would be rehired for the 2009-2010 academic year. Regardless of whether there was a written contract or merely an oral promise to rehire, Plaintiff does not allege that he and his employer intended to make his employment relationship one terminable only for cause. Accordingly, Plaintiff does not allege any cognizable property interest in his job as counselor at 6th District, and therefore, fails to state a due process claim based on that interest as a matter of law.

(ii)     **To the extent Plaintiff's Due Process Claim is based on the stigma he received from being labeled a "child abuser," it must also be dismissed**

It is clear that Plaintiff is claiming his termination from the 6th District resulted in an unconstitutional deprivation of his rights under the Fourteenth Amendment. It is less clear

from the Complaint, however, whether he is also asserting that the stigma resulting from being labeled a "child abuser" equates to a constitutional violation redressable via the Fourteenth Amendment.[5] Insofar as Plaintiff is alleging this stigma amounts a constitutional violation, it fails to state a claim upon which relief may be granted, and thus, is dismissed with prejudice.

To state a procedural due process claim, a plaintiff must establish (1) he had a cognizable property or liberty interest, (2) the defendants deprived him of that interest, and (3) failed to give him the process he was due. *Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009). An injury to a person's reputation, good name, honor, or integrity constitutes the deprivation of a liberty interest when that injury occurs relative to an employee's termination. *Roth*, 408 U.S. at 573; *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989); *In re Selcraig*, 705 F.2d 789, 796 (5th Cir. 1983) ("A constitutional deprivation of liberty occurs when there is some injury to employment or employment opportunities in addition to damage to reputation and a subsequent denial of procedural due process to redress that injury.") (footnote omitted). However, an injury to reputation alone does not implicate a protected liberty or property interest. *Paul v. Davis*, 424 U.S. 693 (1976) (holding that injury

---

[5]Under Count II, Plaintiff claims the Cabinet's "refusal to permit Plaintiff to present any evidence in his defense or view the evidence against him amounted to an unconstitutional taking of his protected property interest (his job at the 6th District)." (Compl. ¶ 93). As such, it is clear that Plaintiff is claiming he was deprived of continued employment at the 6th district, which he characterizes as a constitutionally protected property interest. However, Count II also alleges that Plaintiff "has been denied the opportunity to present evidence on his behalf that should have been used to exonerate him and therefore avoid the stigma of being labeled a 'child abuser.'" (Compl. ¶ 89). In Plaintiff's response to the Cabinet's motion to dismiss and at oral argument, Plaintiff claimed that he has a legitimate "property interest" in his reputation. Further he claims that he was deprived a property interest as a result of the obvious damage to Plaintiff's reputation and the stigma attached to being labeled a "child abuser." (Doc. #13, at 7).

Recognizing that one's interest in professional reputation is a considered a liberty interest, the Court construes Plaintiff's § 1983 claim as one asserting deprivation of property interest in his job as well as a deprivation of his liberty interest in his professional reputation. *Ludwig*, 123 F.3d at 410.

to reputation alone is not a constitutionally protected liberty interest under the Fourteenth Amendment); s*ee also Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999).

To state a claim implicating one's liberty interest in his professional reputation, the following elements must be satisfied:

1. The stigmatizing statements must be made in conjunction with the plaintiff's termination from employment;
2. A plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance;
3. The stigmatizing statements or charges must be made public;
4. The plaintiff must claim that the charges made against him were false; *and*
5. The public dissemination must have been voluntary.

*Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002) (citing *Brown*, 214 F.3d at 722-23). "Once a plaintiff has established all five elements, he is entitled to a name-clearing hearing if he requests one." *Brown*, 214 F.3d at 723. Accordingly, to succeed on a liberty interest claim, Plaintiff must also prove that Defendants improperly refused to grant him a post-removal opportunity to refute the false charges that led to removal. *Baden v. Koch*, 799 F.2d 825, 830 (2d Cir. 1986). "[A] plaintiff's failure to request a name-clearing hearing is fatal to a claim alleging a deprivation of a liberty interest without due process." *Quinn*, 293 F.3d at 323.

Plaintiff's claim as asserted against the Cabinet and Alison Campbell, whether in her official or individual capacity, is not cognizable because the stigmatizing statements alleged and Plaintiff's termination were not coincident: those who made the statements (the Cabinet and Campbell) did not have the authority to terminate Plaintiff. *See* K.R.S. § 160.370 (Superintendent "shall be responsible for the hiring and dismissal of all personnel in the district."). Thus, Plaintiff fails to satisfy the first element. Plaintiff claims it was Alison

Campbell's substantiated investigation report circulated to 6th District personnel that caused him to lose his job. The stigmatizing statements, as such, were not made in conjunction with Plaintiff's employment. Rather, they were made in conjunction with the investigative duties required by the Cabinet and thereby imposed on Alison Campbell as a social worker.

In *Hawkins v. R.I. Lottery Comm'n*, 238 F.3d 112 (1st Cir. 2001), Plaintiff was terminated from his position as director of the Lottery Commission after a rash of negative publicity by the state's governor. Subsequent to losing his job, Plaintiff filed suit against the governor and several other state officials for violation of his liberty interest in his professional reputation. *Id.* at 113. The district court dismissed the lawsuit and the First Circuit affirmed the dismissal on the basis that "the party responsible for the alleged defamation was not the party responsible for the termination," and therefore Plaintiff failed to state a viable due process claim. *Id.* at 116. Although *Hawkins* is not controlling, the Court finds it to be persuasive in this instance. To the extent Plaintiff herein claims reputational injury in violation of the Fourteenth Amendment, he fails to state a viable due process claim. The source of the alleged stigma, Alison Campbell's substantiated investigative report, and the party with the authority to terminate Plaintiff, the superintendent, are two different governmental actors. Accordingly, Plaintiff was not deprived of a liberty interest meriting constitutional protection.

Because neither the Cabinet nor Ms. Campbell *caused* the alleged constitutional deprivation, Plaintiff's claim against them is not cognizable. *Deaton v. Montgomery County*, 989 F.2d 885, 889 (6th Cir. 1993) ("Congress did not intend § 1983 liability to attach where causation is absent."); *see also Kennard v. Wray*, 19 F.3d 19 (6th Cir. 1994) (Table)

(plaintiff could not properly maintain a § 1983 claim against a defendant who did not participate in the decision to demote him and therefore "did not cause the alleged constitutional deprivation."); *McMaster v. City of Troy*, 911 F.2d 733 (6th Cir. 1990) (Table) (dismissal of Plaintiff's § 1983 claim affirmed on the basis that the causal connection between Defendant's policy and the constitutional deprivation alleged was lacking. "[T]he City cannot be held liable because its policy did not cause the alleged constitutional deprivation." (citing *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)). To state a claim under § 1983, plaintiff "must show a causal connection between the named defendants and the alleged constitutional deprivation." *Borden v. Raley, BGPD Detective*, No. 1:08-cv-P27-M, 2008 WL 3884402, at *1 (W.D. Ky. Aug. 20, 2008). Neither named Defendant had any authority to retain or dismiss Plaintiff as an employee at 6th District, and therefore, could not deprive him of the alleged property and liberty interests asserted.

### (iv) Count IV does not state a viable § 1983 claim based on negligent training and supervision

In Count IV, Plaintiff asserts a constitutional violation based on the Cabinet's negligent training and supervision of social worker, Alison Campbell. As an initial matter, Plaintiff concedes that Count IV should be dismissed based on the Cabinet's sovereign immunity. Notwithstanding that concession, Plaintiff seeks to substitute the Cabinet as a named defendant with the more generic reference to supervisory "John Doe Defendants Individually" in an attempt to salvage the claim from complete dismissal.[6] Substitution of generically named John Doe Defendants in their individual capacities, however, will not prevent dismissal.

---

[6]The propriety of Plaintiff's proposed amendment is discussed in Section II, B, 2, *infra*.

Section 1983 does not support a claim based on a *respondeat superior* theory of liability. *Polk County*, 454 U.S. at 325 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Where a plaintiff seeks to hold someone individually liable for constitutional injury directly caused by someone else, the court must apply standards regarding supervisory liability. *Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002). Accordingly, "liability under § 1983 must be based on active unconstitutional behavior and cannot be based on a 'mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). A claim against a supervisory official for failure to supervise, control, or train the offending individual "is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982).

Here, Plaintiff alleges only that Defendant Campbell and the Cabinet conducted a negligent investigation, which requires the considerable assumption that her supervisors–whoever they might be–must have negligently trained and supervised her. This type of generic pleading, completely devoid of any reference to how these alleged supervisors directly participated in the alleged unconstitutional conduct or in what manner they implicitly authorized the behavior, simply will not support a § 1983 action based on supervisory liability. Seeking to impose liability on "John Doe Defendants Individually" solely by virtue of their alleged supervisory status is untenable. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6 th Cir. 2005). As expressed in more detail *infra*, Plaintiff's § 1983

claim for negligent training and supervision is dismissed with prejudice for failure to state a claim upon which relief can be granted.

### (v) Plaintiff's state law claim for negligent investigation fails to state a claim

In Count V of his Complaint, Plaintiff alleges a claim of negligent investigation against Detective Rigney and Alison Campbell in their individual capacities.[7]   Plaintiff contends that Campbell conducted a grossly negligent investigation that amounted to bad faith, and further argues Campbell should not be dismissed because her duty to investigate–and more specifically, her duty to interview him as the alleged perpetrator–constitutes a ministerial act falling outside the protection of qualified governmental immunity.

Under Kentucky law, qualified official immunity "applies to the negligent performance by a public officer or employee of....those [acts] involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment" provided the acts are taken in good faith within the scope of the employee's authority.  *Jones v. Lathram*, 150 S.W.3d 50, 53 (Ky. 2004) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)).  The Cabinet for Health and Family Services is an agency operating under the direction and control of Kentucky's state government, and as such, it and its employees are entitled to the protections of governmental immunity, unless that immunity is explicitly waived.  *Stratton v. Commonwealth*, 182 S.W.3d 516, 519 (Ky. 2006).

---

[7]In allowing Plaintiff's claim against Defendant Rigney for negligent investigation to press forward rather than subjecting it to *sua sponte* dismissal, the Court need not address whether a claim for negligent investigation would be recognized as a viable action under Kentucky law.

Enacted in 1946, the Board of Claims Act represents a limited waiver of immunity. K.R.S. § 44.070, *et seq*. The Act allows for claims against the Commonwealth arising from its negligence, the negligence of its departments and agencies, or its agent and employees while acting within the scope of their employment. *Grayson County Bd. of Educ. v. Casey*, 157 S.W.3d 201, 205 (Ky. 2005). The waiver, however, extends only to negligence claims involving the performance of ministerial acts. K.R.S. § 44.073(2); *Commonwealth v. Sexton*, 256 S.W.3d 29, 32 (Ky. 2008). Ministerial acts require "only obedience to the orders of others" or "when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Yanero*, 65 S.W.3d at 522.

Plaintiff's claim of negligent investigation against Defendant Campbell is based on Campbell's failure to interview him or any other employee at 6th District who knew and worked with Plaintiff.[8] He argues that she had a duty, as a social worker, to interview him as well as other collateral sources of information based on the applicable child protective services regulation under 922 KAR 1:330. He further asserts that her duty to interview him pursuant to the regulation constitutes a ministerial act for which she could not exercise discretion. Section 7 of the regulation provides in relevant part:

(1) An investigation shall be conducted;

(2) If the allegation is made about a school employee exercising custody and control of a child, with the incident occurring during school time or other school-related activity, the cabinet shall, *if possible*, conduct an interview away from the school grounds, with each of the following persons:

---

[8]At this early stage of litigation Plaintiff claims only that Campbell's failure to interview him was negligent, but states in his response to the motion to dismiss that "[d]iscovery will shed light on other aspects of her investigation that were negligent." (Doc. #13, at 10).

(a)   The child;
(b)   The parent or legal guardian;
(c)   The alleged perpetrator; and
(d)   Other collateral source, if any.

922 KAR 1:330 Section 7 (emphasis added). Specifically, Plaintiff alleges that Campbell violated subsections 2(c) and (d) by failing to interview him and other teachers at 6th District. In other words, Plaintiff argues 922 KAR 1:330 Section 7 creates a mandatory duty to interview every person named in the regulation, such that discretion and personal judgment are immaterial. Plaintiff believes that had Campbell conducted interviews subsequent to the alleged victim's interview she would have acquired information establishing Plaintiff's innocence. Plaintiff's argument lacks merit.

The regulation makes clear that a social worker's duty to conduct an investigation is ministerial, but acts relative to who should be interviewed appear to be discretionary in nature. The regulation itself states that the Cabinet shall "if possible" conduct interviews with the alleged victim, perpetrator, parent, or any other collateral sources. 922 KAR 1:330(7)(2)(d). The Kentucky Supreme Court addressed 922 KAR 1:330 Section 7 in *Stratton v. Commonwealth*, 182 S.W.3d 516 (Ky. 2006),[9] wherein Plaintiff appealed a decision by the Board of Claims granting the Cabinet's motion to dismiss based on governmental immunity. In *Stratton*, the Supreme Court of Kentucky affirmed the Court of Appeals' decision which held acts relative to interviewing discretionary by virtue of the "if possible" language contained in the regulation. *Commonwealth v. Stratton*, No. 2002-CA-001136-MR, at *12 (Ky. Ct. App. 2003), *aff'd*, *Stratton*, 182 S.W.3d at 521 ("We interpret 905 KAR 1:330 Section 7 as vesting considerable discretion in the Cabinet upon not only

_____

[9]Prior to its amendment in 2004, 922 KAR 1:330 was found in 905 KAR 1:330.

the means of conducting the interviews but upon whether to conduct the interviews in the first instance.").[10]

In its' decision, the Kentucky Supreme Court's focus was on the discretionary nature of a case worker's actions in resolving a claim of abuse *after* the initial mandatory investigation because in *Stratton* a CPS case worker was accused of negligence when a minor died from injuries inflicted by abuse. 182 S.W.3d at 521. Plaintiff alleged the death could have been prevented had the case worker substantiated the abuse allegation through further collateral source interviews. *Id.* at 518. The court expressed that the regulation does mandate some interviews, namely, the interview with the victim, while all remaining interviews were to be conducted at the discretion of the case worker. *Id.* at 520 ("Performing collateral interviews of individuals not mandated by the regulation...would have been in the discretion of the case workers."). Accordingly, a social worker's decision to interview the alleged perpetrator of an abuse allegation is discretionary under 922 KAR 1:330 Section 7, and Defendant Campbell is entitled to qualified governmental immunity because her decision not to interview Plaintiff would qualify as an act involving personal judgment falling withing the scope of her employment as a social worker.

Moreover, even if the Court determined that interviewing an alleged perpetrator is a ministerial function under the regulation, the Court would lack subject matter jurisdiction to adjudicate the claim. As discussed previously, the Board of Claims has exclusive jurisdiction over negligence claims involving ministerial acts brought against the

---

[10]The Court observes that the *Stratton* decisions interpreted a prior version of the regulation different from the one at issue in this case, which deals with the regulation 922 KAR 1:330 as amended effective June 1, 2004. However, the legislative history indicates the amendment is inconsequential to the determination of this motion to dismiss.

Commonwealth, its cabinets, or it employees. *Grayson County Bd. of Educ. v. Casey*, 157 S.W.3d 201, 205 (Ky. 2005). Accordingly, Plaintiff's state law claim for negligent investigation is dismissed with prejudice.[11]

### (vi) State law claim for outrage fails against Campbell and the Cabinet

See discussion in Section II, A, 4(ii), *infra*.

### 4. Claims Against Defendant Ross are Dismissed

Plaintiff alleges claims against Principal Ross in Counts VI and VII of his Complaint, both of which Ross has moved to dismiss. In Count VI, Plaintiff alleges that Principal Ross unlawfully disseminated information involving the sexual abuse allegation made against him in violation of K.R.S. § 620.050(5). Defendant Ross argues this claim should be dismissed because he is entitled to statutory immunity pursuant to K.R.S. § 620.050(1), or in the alternative, he is entitled to qualified governmental immunity. Count VII alleges the tort of outrage brought against all Defendants.

### (I) Claim for Unlawful Dissemination Fails to State a Claim

Because K.R.S. § 620.050(5) is inapplicable to the conduct asserted in Count VI, Plaintiff's claim for unlawful dissemination is dismissed for failure to state a claim. Specifically, Plaintiff alleges that Principal Ross disseminated information relative to the

---

[11]In Count III of his Complaint, Plaintiff claims a violation of 922 KAR 1:330(7) as a private right of action. Based on the foregoing discussion that Defendant Campbell did not violate 922 KAR 1:330, determining whether a violation of this regulation creates a private right of action is not necessary. Moreover, even if Campbell violated 922 KAR 1:330, Plaintiff's claim amounts to a claim of negligence against a cabinet employee of the Commonwealth. As such, the Board of Claims would have exclusive jurisdiction of the action. Count III should therefore be dismissed in its entirety.

abuse allegation to various employees at 6th District in direct violation of K.R.S. §

620.050(5).[12] Subsection (5) of the statute instructs:

> *The report* of suspected child abuse, neglect, or dependency and all information
> obtained *by the cabinet or its delegated representative*, as a result of investigation
> or assessment made pursuant to this chapter...shall not be divulged to anyone
> except:
>
> (a)    Persons suspected of causing dependency, neglect, or abuse;
> (b)    The custodial parent or legal guardian of the child alleged to be
>         dependent, neglected, or abused;
> (c)    Persons within the cabinet with a legitimate interest or responsibility
>         related to the case;
> (d)    Other medical, psychological, educational, or social service
>         agencies, child care administrators, corrections personnel, or law
>         enforcement agencies, including the county attorney's office, the
>         coroner, and the local child fatality response team, that have a
>         legitimate interest in the case;
> (e)    A non-custodial parent when the dependency, neglect, or abuse is
>         substantiated;
> (f)    Members of multi-disciplinary teams as defined by KRS 620.020 and
>         which operate pursuant to KRS 431.600;
> (g)    Employees or designated agents of a children's advocacy center; or
> (h)    Those persons so authorized by court order.

K.R.S. § 620.050(5) (emphasis added).

In his complaint at paragraphs 109-110, Plaintiff asserts "[s]hortly after he was

informed of the allegations made about Plaintiff, Ross revealed to certain teachers and

employees at the 6th District that the abuse allegations had been made. None of the people

to whom Ross divulged the information regarding the abuse were among those people

designated in the above referenced statute." This dissemination is the basis of Plaintiff's

claim in Count VI, however, the above-referenced statute is entirely inapplicable for two

reasons: (1) the statute dictates confidentiality requirements for the Cabinet and its

---

[12]At oral argument Plaintiff's counsel acknowledged that two individuals to whom Ross allegedly
divulged information were 6th District employees.

designated representative; and (2) the situation described in Count VI, does not constitute a "report" within the statute's meaning.

As an initial matter, K.R.S. § 620.050 cannot be fully understood apart from Kentucky's mandatory reporting statute codified at K.R.S. § 620.030, which provides in relevant part:

> Any person who knows or has reasonable cause to believe that a child is dependent, neglected, or abused shall immediately cause an *oral or written report* to be made to a *local law enforcement agency*...the *cabinet or its designated representative*...Any *supervisor* who receives from and employee a report of suspected dependency, neglect, or abuse shall promptly make a *report to the proper authorities for investigation* ... Nothing in this section shall relieve individuals of their obligations to report.

K.R.S. § 620.030(1) (emphasis added). The Kentucky Supreme Court has stated the language of Kentucky's mandatory reporting statute is "clear and unambiguous" such that "[a]ll individuals with firsthand knowledge or reasonable cause to believe that a child is abused have a mandatory duty to report the abuse." *Commonwealth v. Allen*, 980 S.W.2d 278, 281 (Ky. 1998). Supervisors who receive reports from their subordinates must relay that information to the authorities. *Id.* A school principal squarely falls within the meaning of the statute's reference to "supervisors." *Id.* However, K.R.S. § 620.050(5) forbids dissemination of "the report of suspected child abuse....and all information obtained by the *cabinet or its delegated representative*." The statute expressly prohibits Cabinet employees from divulging information, it is not applicable broadly to all persons having knowledge of the alleged abuse. *See Cabinet for Health and Family Servs. v. Kiser*, No. 2003-ca-002222, 2006 WL 1112948, at *8 (Ky. Ct. App. April 28, 2006) (K.R.S. § 620.050 expressly prohibits *Cabinet employees* from divulging information about child abuse and neglect investigations). Although it is likely the 6th District has some code of conduct related to confidentiality of

abuse allegations, Principal Ross cannot be held liable for his alleged dissemination of information to other teachers and employees under K.R.S. § 620.050.

Furthermore, the statute's prohibition against dissemination of "the report" dictates confidentiality of any information "obtained by the cabinet" on account of the formal report made to law enforcement or its agency directly. *Allen*, 980 S.W.2d at 281. To infer–as Plaintiff asks the Court to do here–that any communication relative to the abuse allegation among persons having knowledge constitutes "the report" for purposes of the statute which creates private right of action is simply implausible. Kentucky Supreme Court precedent exposes the infirmity of Plaintiff's argument.

In *Allen*, a teacher and school counselor were charged with a misdemeanor for failing to make a report of suspected child abuse to state authorities pursuant to K.R.S. § 620.030. The two defended on the ground that they reported the abuse to their supervisor, the school principal, or in the alternative, they were entitled to statutory immunity under K.R.S. § 620.050. 980 S.W.2d at 279. The Kentucky Supreme Court held that the two were not entitled to statutory immunity because a report of abuse to a supervisor is not a "report" within the meaning of K.R.S. § 620.030–to which § 620.050(5) refers–and thus appellees did "not meet the threshold requirement for the protection of immunity." *Id.* at 281. Although the Court is not interested in the statute's meaning of "the report" for statutory immunity purposes under K.R.S. § 620.050, the Kentucky Supreme Court's holding in *Allen* equally dictates the logical conclusion here that a report of abuse to one's supervisor and any communication thereafter–if not to local law enforcement or the cabinet directly–does not constitute a "report" within the meaning of the statute.

Moreover, even if the Court were to find the statue applicable in this case, Principal Ross' divulgence of the abuse allegation to other 6th District teachers would fall within the ambit of qualified governmental immunity for discretionary acts.  As discussed previously with respect to Defendant Campbell, Kentucky recognizes the doctrine of qualified immunity, which protects public employees from liability for acts involving the exercise of discretion, judgment, or personal deliberation.  *Jones*, 150 S.W.3d at 53; *Yanero*, 65 S.W.3d at 522.  Defendant Ross, as principal of 6th District, is entitled to the protections of governmental immunity, unless that immunity is explicitly waived.  *Stratton*, 182 S.W.3d at  519.  Here, Plaintiff's claim of unlawful dissemination is based on Principal Ross' alleged dissemination to "certain teachers and employees at the 6th District."  (Compl.  ¶ 109).  At oral argument, Plaintiff's counsel asserted that *if* Ross disseminated information to teachers who did not have J.S. in class such a divulgence would constitute a violation of the statute.  That Plaintiff's counsel is uncertain whether the alleged violation even took place is itself problematic, however, even if it did his actions constitute a discretionary act for purposes of qualified governmental immunity.  The statute allows dissemination within educational agencies and to child care administrators who have a "legitimate interest in the case." K.R.S. § 620.050(5)(d).  Whether an administrator actually has a "legitimate interest" certainly requires exercise of personal judgment and decision-making within the scope of Defendant Ross' job as school principal.  Disseminating information to other colleagues, therefore, constitutes a discretionary act protected under qualified governmental immunity.

Accordingly, Count VI must be dismissed in its entirety on both the merits and qualified immunity grounds.

**(ii)    Plaintiff's Claim for Tort of Outrage Against Defendants Campbell, Ross, and the Cabinet Fails as a Matter of Law**

In Count VII of his Complaint, Plaintiff asserts a claim for the tort of outrage (i.e. intentional infliction of emotional distress).  Plaintiff does not assert any specific "outrageous" behavior in Count VII, but incorporates by reference all previously contained paragraphs. In his Response to the Cabinet's motion to dismiss, Plaintiff identifies Campbell's failure to interview him and her subsequent belief that J.S. was telling the truth about the abuse allegation to be "outrageous" because such conduct offends generally accepted standards of decency and morality.  (Doc. # 13, at 10).

In response to Defendant Ross' motion to dismiss, Plaintiff asserts that it was outrageous for Principal Ross to accept verbatim the  "incredible allegation of abuse...from a significantly troubled seven year old boy without providing Wesley an opportunity to refute the charges against him."  (Doc. # 14, at 8).  Plaintiff goes on to allege that Principal Ross may have contributed most significantly to his damages–in essence, his conduct was the most outrageous–because Ross knew that Plaintiff was a popular counselor with the students at 6th District.  And further, with an office just a few feet from Plaintiff's, Ross had "intimate knowledge" that Plaintiff could not have committed the abuse described during school hours.  (Doc. # 14, at 9).  Plaintiff also alleges that although he is unaware to whom Principal Ross divulged the abuse allegation, *if* he told "janitorial staff or other teachers that did not have J.S. in class" in an attempt to ruin his reputation, such conduct would be outrageous.  (Doc. #14, at 9).

Defendants move to dismiss Plaintiff's claim for outrage on the basis that he does not assert conduct that could adequately be characterized as outrageous.  Furthermore, the tort

of outrage is intended as a 'gap-filler' and is viable only in instances where a plaintiff's extreme emotional distress would not otherwise be redressed. Defendants' arguments are well-taken.

Under Kentucky law, to state a claim for outrage a Plaintiff must make factual allegations respecting each of the following elements of the tort: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe. *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996) (citing *Craft v. Rice*, 671 S.W.2d 247, 249 (1984)). The tort of outrage does not redress behavior "lacking sensitivity," but instead behavior that is so intolerable it has the effect of "bringing one to his knees." *Osborne v. Payne*, 31 S.W.3d 911, 914 (Ky. 2000). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990) (quoting Restatement (Second) of Torts: Outrageous Conduct Causing Severe Emotional Distress § 46 cmt. d (1965)).

Even viewed in a light most favorable to Plaintiff, the allegations of outrageous behavior by Campbell and Ross are insufficient to merit a claim for intentional infliction of emotional distress. Ross and Campbell's actions while unsatisfactory to Plaintiff, do not constitute outrageous conduct, but rather are consistent with Kentucky's mandatory reporting statute for suspected child abuse. K.R.S. § 620.030. In *Morgan v. Bird*, 289 S.W.3d 222 (Ky. Ct. App. 2009), the Kentucky Court of Appeals affirmed the dismissal of

an outrage claim where an officer reported an allegation of child abuse to the Kentucky Cabinet for Health and Family Services after responding to a neighbor's report of a young child seen in his backyard taking sips from a beer can. Subsequently finding beer cans littered throughout the backyard, Officer Bird reported the child's parents to the Cabinet. *Morgan*, 289 S.W.3d at 228. In affirming the trial court's dismissal, the Court of Appeals acknowledged that Officer Bird's behavior was consistent with Kentucky's mandatory reporting statute, K.R.S. § 620.030, which requires any person who suspects child abuse or neglect to report such conduct to a local law enforcement agency. In further support of its holding, the court explained "[i]mmunity statutes...were instituted by legislatures to ensure citizens will not be hesitant to report suspected abuse or neglect for fear of reprisal from upset and sometimes wrongly accused [persons]."[13] *Id.* The aim of Kentucky's mandatory reporting statute is prompt investigation and the fierce protection of children. Compliance with the statute simply does not form the basis of the tort of outrage.

Here, Plaintiff asserts that it was outrageous for Principal Ross to believe the abuse allegations of a deeply troubled seven-year-old boy and then disclose that information to other teachers at 6th District. Such conduct does not rise to the level necessary to state a claim for the tort of outrage. Believing the boy's allegations is not outrageous, but consistent with the aim of Kentucky's reporting statute to protect children from abuse and neglect. That Principal Ross relayed the information to other teachers at the school, while possibly an ill-considered personnel decision, certainly does not rise to the level of outrageous conduct.

---

[13]K.R.S. § 620.050(1) states that "[a]nyone acting upon reasonable cause in the making of a report or acting under KRS 620.030 to 620.050 in good faith shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed." Immunity under K.R.S. § 620.050 has two basic components: (1) the report must be made pursuant to K.R.S. § 620.030; and (2) the reporter must act in good faith. *Commonwealth v. Allen*, 980 S.W.2d 278, 281 (Ky. 1998).

Campbell's investigation was also consistent with her duty as a social worker and with the statute's aim at protecting children. Campbell interviewed the child soon after the allegation was made at a location off of school premises. Nothing alleged in the Complaint implicates behavior outside the realm of that which is tolerated in a civilized community.

Plaintiff's allegations, moreover, simply do not support the second element: that Defendants' conduct be done intentionally to cause emotional distress. Nothing in the Complaint indicates any motive for Campbell or Ross' conduct, aside from a sheer desire to protect J.S. from subsequent abuse–a course of action dictated by their jobs. That the allegation may have been false does not absolve Ross of his reporting duty nor Campbell of her investigative duty under Kentucky law. Because Defendants' conduct is not so shockingly violative of standards of decency to merit recovery under the tort theory of outrage–in other words, the conduct alleged is not outrageous as a matter of law–this claim warrants dismissal. *See Jones v. Global Info. Group, Inc.*, No. 3:06-00246, 2009 WL 799745, at *6 (W.D. Ky. March 25, 2009) (court grants defendant's 12(b)(6) motion to dismiss Plaintiff's claim for intentional infliction of emotional distress "absent a more detailed description of the shockingly abusive acts committed directly by [defendant].").

## B.    Motion to Amend Complaint

### 1.    Standard of Review

Federal Rule of Civil Procedure 15(a)(2) provides that when a party seeks to amend his pleading, the court "should freely give leave [to amend] when justice so requires." The standard announced in Rule 15(a) is a liberal one, and while subject to the district court's discretion, leave to amend should be denied only in specific instances. "A motion to amend

a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile."  *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)); *see also Hutsell v. Sayre*, 5 F.3d 996, 1006 (6th Cir. 1993) (the court need not permit amendment where such amendment would be futile).

"A proposed amendment is futile if the amendment could not withstand a 12(b)(6) motion to dismiss."  *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, Mich., Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)).  A complaint survives a Rule 12(b)(6) dismissal provided it contains "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005).

### 2.    Amendment Adding "John Doe Defendants Individually" to Plaintiff's Complaint is Futile

After Defendants Campbell, Ross, and the Cabinet filed motions to dismiss the Complaint, Plaintiff filed a Motion to File an Amended Complaint (Doc. # 12) pursuant to Rule 15(a).  In his motion, Plaintiff proposes the following amendments: (1) substitution of "John Doe Defendants Individually" in place of the Cabinet in Counts II and IV, also to be included as "all defendants" in Counts VII and VIII; (2) amendment of paragraph 64 to make clear Plaintiff is alleging he was terminated because of the sexual abuse allegation lodged against him, not based on a supposed "reduction in [the school's] funding"; and (3) amendment of paragraph 102 to include the allegation that he lost his job as a result of Campbell's conduct.

Defendants Campbell and the Cabinet filed a lengthy response in opposition to Plaintiff's proposed amendment to add John Doe Defendants Individually on the basis that such an amendment would be futile. (Doc. # 16). Specifically, Defendants argue that the proposed John Doe Defendants in their individual capacities are immune from suit and a cause of action premised on *respondeat superior* against Campbell's supervisors fails as a matter of law. Defendants seemingly do not object to Plaintiff's proposed amendments to paragraphs 64 and 102 of the Complaint. Defendants' objection to the inclusion of supervisory John Doe Defendants Individually is well-taken, and amendment will not be permitted on the basis of futility.

Amendment of supervisory John Doe Defendants Individually is futile for two reasons: (1) Section 1983 does not support a claim based on a *respondeat superior* theory of liability, *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); and (2) the proposed amendment is barred by the applicable statute of limitations. First, where a plaintiff seeks to hold someone individually liable for constitutional injury directly caused by someone else, the court must apply standards regarding supervisory liability. *Doe v. City of Roseville*, 296 F.3d 431, 439-40 (6th Cir. 2002). Accordingly, "liability under § 1983 must be based on active unconstitutional behavior and cannot be based on a 'mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citation omitted). The specific standard announced by the Sixth Circuit states that a claim against a supervisory official for failure to supervise, control, or train the offending individual "is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly

authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982).

Here, Plaintiff's proposed amendment does nothing in the way of alleging that Alison Campbell's supervisors "either encouraged the specific incident of misconduct or in some other way directly participated in it." At most, there is an allegation that Alison Campbell had supervisors who must have trained her–though Plaintiff is uncertain of this fact–and further, the training she allegedly received was inadequate. Accordingly, "John Doe Defendants Individually" may not be held liable for the alleged misconduct of Campbell based solely on the fact that such defendant(s) might exist and, if so, failed to adequately supervised Campbell. To the extent Plaintiff's § 1983 claim is based on *respondeat superior* it will be dismissed. *See Clark v. Kentucky*, 229 F. Supp. 2d 718, 723 (E.D. Ky. 2002) (Section 1983 claim for negligent training and supervision dismissed where Plaintiff alleged that Defendant's "duties include training and supervision" and that Defendant was "responsible for the acts of his control officers.").

Second, because the limitations period had run to add additional parties, and the Sixth Circuit's precedent treating such amendments as not relating back to the original pleading under Fed.R.Civ.P. 15(c), Plaintiff's proposed amendment is time-barred. For claims involving 42 U.S.C. § 1983, the applicable statute of limitations is that for personal injury tort actions in the state where the cause of action originated. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Brown v. Wigginton, Ky.*, 981 F.2d 913, 914 (6th Cir. 1992). Under Kentucky law, a personal injury action must be filed within one year of date the action accrues, i.e. when the injury occurs. K.R.S. § 413.140(1); *see Million v. Raymer*, 139 S.W.3d 914, 919 (Ky. 2004). At the latest, this action accrued on March 23, 2009, when the

Plaintiff was officially terminated from his position as guidance counselor from 6th District, which serves as the basis of his Complaint. Accordingly, the statute of limitations had run as of March 24, 2010. Plaintiff did not move to amend his Complaint until May 6, 2010, well after the one-year limitations period had run.

An otherwise time-barred amendment to a pleading is therefore permissible only if it satisfies the requirements under Rule 15(c) and relates back to the original pleading. Under Rule 15(c), an amendment relates back to the filing of the complaint when:

> (C)    the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (I)    received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed.R.Civ.P. 15(c)(1)(C). In other words, defendants must receive actual or constructive notice of the lawsuit within the period provided for service of the summons and complaint. *Cox v. Treadway*, 75 F.3d 230, 240 (6 th Cir. 1996), *cert. denied*, 519 U.S. 821 (1996). Sixth Circuit precedent establishes, however, that new parties may not be added to an action after the statute of limitations runs, and further, such amendments do not satisfy the "mistaken identity" requirement of Rule 15(c)(1)(C)(ii). *Id.*; *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) ("The precedent of this circuit clearly holds that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.") (citation and quotations omitted). Simply stated, the addition of a new party does not "relate back" if the addition

falls outside the statute of limitations and the added party is not the result of a mistake in identity. Moreover, Sixth Circuit precedent establishes that "a plaintiff's lack of knowledge pertaining to an intended defendant's identity does not constitute a 'mistake concerning the party's identity' within the meaning of Rule 15(c)." *Moore v. Tennessee*, 267 F. App'x 450, 455 (6th Cir. 2008).

The amendment Plaintiff proposes clearly adds new parties to the complaint and Plaintiff's lack of knowledge about the proposed defendants' identities does not constitute a 'mistake' for purposes of Rule 15(c). The Sixth Circuit has held that replacement of John Doe Defendants with a named defendant is considered a *change* in party, not merely a *substitution* of parties. *Id.* (substitution of a "John Doe" defendant with a named defendant is a not a misnomer but a "change in parties" that does not relate back). The Court finds the holding in *Cox* extends by analogy to the reverse factual circumstance presented in this case: an attempted amendment to replace an already named defendant with the more generic reference to "John Doe Defendants Individually."

Plaintiff's proposed amendment logically dictates that at some future stage of litigation Plaintiff will again move for amendment to replace "John Doe Defendants Individually" with named defendants, and the Court will be bound by the precedent set forth in *Cox*. Accordingly, the proposed amendment here is one the Court views as the addition of new parties not merely a substitution of parties or a mistake in the identity of parties, and as such, must comply with the statute of limitations. Because the statute of limitations had run when Plaintiff filed his motion to include additional "John Doe Defendants Individually," his proposed amendment is time-barred, and therefore, futile.

### 3. All Other Proposed Amendments are Futile

Plaintiff's proposed amendments to paragraphs 64 and 102 will also be denied as futile. Plaintiff's proposed amendments to make clear that he was terminated based on the abuse allegation–not a reduction in funding–and that Campbell's conduct caused his termination do not remedy the infirmities of Plaintiff's Complaint warranting dismissal of all claims against the Cabinet, Alison Campbell, and Anthony Ross on the merits. As such, Plaintiff's motion to amend shall be denied in its entirety on the basis of futility.

### III.    CONCLUSION

Because Defendants Campbell and the Cabinet are entitled to sovereign immunity, and because Plaintiff's federal and state law claims against the named and unnamed state defendants fail as a matter of law, all claims against them shall be dismissed with prejudice. The claims against Defendant Ross also fail to state a claim and shall be dismissed with prejudice pursuant to Rule 12(b)(6). Moreover, because Plaintiff's proposed amendments to the Complaint are futile, his motion for leave to amend shall be denied.

Accordingly, **IT IS ORDERED** as follows:

1. Defendants Alison Campbell and the Cabinet's Motion to Dismiss (Doc. # 5) is hereby **GRANTED**;

2. Defendant Anthony Ross' Motion to Dismiss (Docs. # 10 & 11) is hereby **GRANTED**; and

3. Because amendment would be futile, Plaintiff's Motion to File an Amended Complaint (Doc. # 12) is hereby **DENIED**.

This 5th day August, 2010.



Signed By:
*David L. Bunning*    DB
United States District Judge

G:\DATA\Opinions\Covington\10-51 MOO granting MTD.wpd