**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 10-51-DLB-JGW**

**RICHARD WESLEY**                                                                **PLAINTIFF**

**vs.**                          **MEMORANDUM OPINION AND ORDER**

**JOANNE RIGNEY,** *Individually and in her capacity*
*as a police officer for the City of Covington*                          **DEFENDANT**

\*\*\*  \*\*\*  \*\*\*  \*\*\*

## I.  INTRODUCTION

This action arises out of a seven-year-old's allegation that he was sexually abused by his school counselor, Plaintiff Richard Wesley.  After investigating the allegation, Defendant Joanne Rigney, a detective with the Covington Police Department, submitted a Complaint and Affidavit to a Kentucky district court judge setting forth facts to establish probable cause that Plaintiff committed sexual abuse in the first degree.  Based solely on Defendant Rigney's affidavit, the judge issued a warrant for Plaintiff's arrest, and Plaintiff was subsequently arrested.  A grand jury, however, refused to indict Plaintiff on the charge of sexual abuse in the first degree.

Plaintiff Richard Wesley subsequently commenced this § 1983 action against Defendant Joanne Rigney alleging retaliatory and wrongful arrest in violation of his First and Fourth Amendment rights.  Plaintiff also advances two state-law tort claims: the tort of outrage and negligent investigation.  These claims generally rely on three assertions: (1)

1

Defendant negligently investigated the sexual abuse allegations; (2) Defendant intentionally omitted exculpatory facts from her affidavit causing the district court judge to make an erroneous probable cause determination; and (3) Defendant's purpose in submitting the affidavit was to stifle Plaintiff's right to free speech.

This matter is before the Court on Defendant's Motion to Dismiss (Doc. # 63), which has been fully briefed (*See* Docs. # 66, 67) and is ripe for review.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The following facts, which have been gleaned solely from Plaintiff's Amended Complaint, are accepted as true for purposes of addressing Defendant's motion to dismiss. *Evans Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005). Plaintiff Richard Wesley was employed as a school counselor at 6th District Elementary School in Covington, Kentucky. In that capacity, he worked closely with elementary-age students counseling them on various problems.

In August of 2008, Plaintiff began working with one particular student, J.S., a seven-year-old who suffered from severe emotional problems. On one occasion, Plaintiff asked J.S. to draw a picture depicting his emotions. J.S. responded by drawing a picture of himself holding knives in both hands with his bloodied family members laying on the ground around him. This picture, as well as Plaintiff's other interactions with J.S., led Plaintiff to believe J.S. was being abused. Plaintiff, therefore, scheduled multiple appointments for J.S. at a community mental health facility; however, J.S.'s mother failed to take J.S. to each of the appointments.

On February 5, 2009, Plaintiff found J.S. in the school hallway with a wristband stuck in his nose as he was attempting to shove another wristband in his mouth. After some

questioning, J.S. told Plaintiff he wanted to kill himself.  Plaintiff then contacted J.S.'s mother and urged her to immediately take the child to the community mental health facility. Despite initial hesitation, the mother complied.

Sometime after J.S. and the mother arrived at the mental health facility, J.S. disclosed to either his mother or Alison Campbell, a Social Services Worker,[1] that Plaintiff had fondled his penis.  Campbell then "bypassed normal procedure" of the Covington Police Department and "personally selected" Defendant to be assigned as the detective on the criminal case.  On February 9, 2009, Campbell and Defendant attended a forensic interview of J.S. conducted at the Children's Advocacy Center.  During the interview, Defendant heard J.S. allege that Plaintiff had also anally sodomized him on multiple occasions over the course of a year while the two were alone in Plaintiff's office.  J.S. was later physically examined but presented no injuries consistent with sexual abuse.

By this time, Plaintiff was aware that J.S. had made allegations against him, although he did not know the specifics.  In anticipation of forthcoming criminal charges, Plaintiff retained Ms. Alexandria Lubans-Otto, a former Assistant Commonwealth's Attorney, to defend him.  Otto contacted Defendant on at least one occasion and expressed her desire to permit Defendant to interview Plaintiff.  Defendant responded that she needed to conduct further investigation before interviewing Plaintiff, including interviewing other students at 6th District.  In the end, Defendant never interviewed Plaintiff.

According to Plaintiff, Defendant's investigation was limited and uncovered no additional inculpatory information.  Plaintiff acknowledges that Defendant did, in fact,

---

[1]  The Complaint states that "J.S. disclosed to someone (it is unclear whether the disclosure was made to M.S. or to Campbell) that Plaintiff had fondled his penis."  (Doc. # 1 at ¶ 31).

interview students at 6th District. However, Plaintiff contends that none of the students disclosed any inculpatory information, but instead explained that Plaintiff always acted professionally and appropriately. Plaintiff also contends that Defendant never interviewed anyone that worked in close proximity to his office – where the abuse allegedly occurred.

While Defendant's investigation continued, Allison Campbell – the social services worker – filed a "Substantiated Investigation Notification Letter" with the Education Professional Standards Board against Plaintiff. In the letter, Campbell stated that she had "substantiated" allegations that Plaintiff had fondled J.S.' penis and anally sodomized the child multiple times over the course of a one-year period. The letter also explained that the perpetrator, Plaintiff, had the right to appeal the substantial abuse finding. On March 31, 2009, Plaintiff requested a hearing to appeal the finding. Defendant learned of Plaintiff's appeal soon thereafter.

On April 30, 2009, and after learning of Plaintiff's appeal, Defendant submitted a "Complaint and Affidavit" to a Kenton County District Judge setting forth facts to establish probable cause that Plaintiff committed sexual abuse in the first degree. The affidavit detailed J.S.'s initial disclosure on February 5, 2009 that Plaintiff had fondled his penis, as well as J.S.'s February 9, 2009 disclosure that Plaintiff anally sodomized him multiple times. Specifically, the affidavit stated:

> Affiant states that on February 06, 2009, she was assigned to investigate a Sexual Abuse in the First Degree report. Affiant states that she was contacted by the Cabinet for Health and Family Services in regard to a disclosure that was made by the minor victim J.S., age 7, on February 05, 2009. At that time, J.S. stated that the defendant had fondled his penis while in the defendants (sic) office at 6th District School. The defendant is employed as a school counselor at 6th District School. The minor, J.S., was then scheduled for a forensic interview at the Childrens (sic) Advocacy Center, at that time the child stated that the defendant had put his private

part in his butt.  J.S. stated that this took place in Mr. Wesley's office.  J.S.
described that the defendant pulled down the back of his pants while he was
near a blue round table.  J.S. also advised that the defendant was squeezing
J.S.'s private parts.  J.S. stated that he was told by the defendant that he
would kick him out of school if he told anyone.  J.S. stated that this happened
more than once.

(Doc. # 1-2).[2]

After reviewing the affidavit, the Kenton County District Judge found probable cause

that Plaintiff had committed sexual abuse in the first degree and issued a warrant for his

arrest.  Plaintiff was subsequently arrested by an unknown officer, and released from jail

that same day after posting a $5,000.00 cash bond.  Later that summer, the Kenton County

Grand Jury considered the evidence against Plaintiff and returned a No True Bill, refusing

to indict him on a sexual abuse charge.

In light of the foregoing events, Plaintiff filed this § 1983 action against Defendant

Rigney and others on March 12, 2010.[3]  In the original complaint, Plaintiff alleged that

Defendant violated his Fourth Amendment to be free from unlawful arrest by intentionally

excluding material exculpatory information from her Complaint and Affidavit, causing the

Kenton County District Judge to erroneously find probable cause to issue an arrest warrant.

Specifically, Plaintiff asserted that Defendant intentionally omitted the following information:

(1) J.S. suffered from psychological and emotional problems, causing him to hospitalized

for two weeks at Mercy Hospital; (2) a physical examination of J.S. revealed no injuries

---

[2]  The contents of Defendant's "Complaint and Affidavit" may be considered in adjudicating this motion to dismiss under Rule 12(b)(6) because the affidavit was attached to Plaintiff's Complaint.  *See Amini v. Oberline College*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir. 1997) ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although . . . exhibits attached to the complaint, also may be taken into account.").

[3]  The other defendants were previously dismissed from this action (*See* Doc. # 24), and the claims against them are irrelevant to the adjudication of the presently-pending motion to dismiss.

consistent with sexual abuse, particularly anal sodomy; and (3) "it would have been literally impossible for the act of sodomy to have taken place over a one year period in Plaintiff's office due to the close proximity of other school employees including the Principal and Secretary as well as the proximity to the faculty mail room."  (Doc. # 1 at ¶ 59).

The original Complaint also asserted state-law claims of outrage and negligent investigation.  Plaintiff contends that Defendant breached her duty to conduct a reasonably competent investigation into whether Plaintiff committed the alleged crime before filing her affidavit.   Additionally, Plaintiff argues that Defendant's conduct was intentional and reckless and caused him to suffer extreme emotional distress, and the conduct was so outrageous and intolerable that it offends the generally accepted standards of decency and morality.

Defendant answered the Complaint on April 9, 2010 (Doc. # 9), and generally denied the material allegations against her.  Defendant also raised eighteen (18) affirmative defenses, including immunity under federal and state law and failure to state a claim for which relief can be granted.  After the Answer was filed, the parties conducted discovery for approximately a year-and-a-half.

Near the conclusion of discovery, Plaintiff moved for leave to amend his Complaint by adding a retaliatory arrest claim (Doc. # 57), which was granted by the Magistrate Judge (Doc. # 60).  The retaliatory arrest claim alleges that Defendant filed her Complaint and Affidavit in retaliation of Plaintiff exercising his First Amendment right to appeal Social Worker Campbell's substantiated-abuse finding.   Defendant responded by moving to dismiss all claims against her (Doc. # 63), including those pled in the original Complaint, which is presently pending before the Court.

6

# III.  ANALYSIS

## A.  Defendant is permitted to file a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

Without offering any legal justification, Plaintiff asserts that Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is improper at this point in the litigation.  Plaintiff filed the original Complaint on March 12, 2010, asserting three claims against Defendant.  Defendant filed an Answer and the parties proceeded to discovery. Near the conclusion of discovery, Plaintiff filed an Amended Complaint asserting a retaliatory arrest claim and incorporating each of the other claims by reference.  Defendant then filed a motion to dismiss all four claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff asserts that this motion is improper because discovery has concluded and he should not be deprived of the ability to have the evidence considered.

Despite Plaintiff's bald assertion, Defendant is permitted to move for dismissal on all claims pursuant to Rule 12(b)(6).  Once accepted, Plaintiff's amended complaint replaced the original complaint.  *See Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 702 (1982) (White, J., concurring in part & dissenting in part on other grounds, joined by Powell, Rehnquist, & O'Connor, JJ.).  The amended complaint essentially rendered the original complaint null and void.  *Van Vels v. Betten*, No. 1:06-cv-710, 2007 WL 2461933, at *1 (W.D. Mich. Aug. 27, 2007) (citing *Vadas v. United States*, 527 F.3d 16, 22 n. 4 (2d Cir. 2007)).  As such, Defendant was permitted to file a responsive pleading to the amended complaint.  *See* Fed. R. Civ. P. 15(a)(3).  And pursuant to Rule 12(b), Defendant filed a timely Rule 12(b)(6) motion by filing it prior to filing an answer to the amended complaint. Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must

be made before pleading if a responsive pleading is required.").

The posture of this case, particularly the fact that discovery has concluded, does not compel a different conclusion. Pursuant to Rule 12(h)(2)(C), a defendant may argue that the complaint fails to state a claim upon which relief can be granted as late as at trial. This litigation has certainly not proceeded that far; therefore, the posture of this case does not compel the Court to deny the Motion to Dismiss. Accordingly, the Court will consider Defendant's Motion to Dismiss each claim pled in the Amended Complaint.

## B.    Standard of Review

Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing a Rule 12(b)(6) motion to dismiss, this Court "must construe the complaint in a light most favorable to the plaintiff, and accept all of [his] factual allegations as true. When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citations omitted). The Court, however, is not bound to accept as true unwarranted factual inferences, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), or legal conclusions unsupported by well-pleaded facts. *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 950 (6th Cir. 1990).

To survive a motion to dismiss, the complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, but it must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. To satisfy this standard, the complaint

must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

### C. The Amended Complaint fails to state a Section 1983 claim against Defendant Rigney in her official capacity

Plaintiff brings two § 1983 claims against Defendant in her official capacity as a Covington police officer. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690 n. 44 (1978)). In other words, Plaintiff's § 1983 claims against Defendant in her official capacity are properly analyzed as claims against her employer, the City of Covington. The Amended Complaint, however, fails to allege sufficient facts to establish that the City of Covington is liable for any constitutional violation.

The City of Covington cannot be liable *solely* because its employee, Defendant, violated Plaintiff's constitutional rights. *See Monell*, 436 at 691 ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Instead, the City may only be liable "when execution of a  [City's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id.* at 694. As Defendant appropriately argues, Plaintiff's Complaint contains no factual allegations to suggest that his constitutional rights were violated because of any City of Covington policy. Plaintiff has apparently conceded this point by not responding to Defendant's argument that the Complaint fails to state a viable § 1983 claim against the City of Covington. Therefore, Plaintiff's § 1983 claims against Defendant in her official

9

capacity are dismissed.

**D.    Defendant is entitled to qualified immunity on Plaintiff's unlawful arrest claim**

In Count 1 of the Amended Complaint, Plaintiff alleges that Defendant violated her Fourth Amendment right to be free from an unreasonable seizure.  To prevail on this claim – an unlawful arrest claim – Plaintiff must show "that the arresting officer lacked probable cause to arrest the plaintiff."  *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).  Generally an "arrest based on a facially valid warrant approved by a magistrate provides a complete defense" to an unlawful arrest claim.  *Id.*  However, Plaintiff alleges that Defendant cannot rely on the state court judge's finding of probable cause for two reasons.  First, Plaintiff relies on *Vakilian v. Shaw*, 335 F.3d 509 (6th Cir. 2003), in asserting that Defendant violated his Fourth Amendment rights by intentionally omitting exculpatory information from her Complaint and Affidavit that would have led the judge to find no probable cause if it were included.  Second, Plaintiff contends that Defendant conducted an inadequate investigation by failing to interview various witnesses, and therefore acted with reckless disregard for the truth in seeking an arrest warrant.

Defendant has moved for dismissal on the unlawful arrest claim, arguing that the Amended Complaint fails to set forth sufficient facts to demonstrate that Plaintiff's arrest was not based on probable cause.  Specifically, Defendant contends that there was probable cause to believe Plaintiff sexually abused J.S. based solely on the child's statements.  And because she had probable cause, Defendant argues she was under no duty to investigate further or to discover additional evidence which may exculpate Plaintiff.  *See Ahlers*, 188 F.3d at 371 ("Once probable cause is established, an officer is under no

10

duty to investigate or to look for additional evidence which may exculpate the accused."). Alternatively, Defendant asserts that she is entitled to qualified immunity on this wrongful arrest claim.

"Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).  Once a defendant raises the affirmative defense of qualified immunity, the plaintiff must "offer[ ] sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."  *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 n. 2 (6th Cir. 2005).  In analyzing the qualified-immunity defense in the Sixth Circuit, courts are instructed to apply a three-part test[4]: (1) whether a constitutional violation occurred; (2) whether that violation was of clearly established law; and (3) whether the defendant's actions were objectively unreasonable in light of the clearly established law.  *Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2010).  With this framework in mind, the Court will address each of Plaintiff's Fourth Amendment arguments in turn.

**(1)** **Omissions liability pursuant to *Vakilan v. Shaw*, 335 F.3d 509 (6th Cir. 2003)**

The Sixth Circuit has more directly framed the qualified-immunity analysis in cases such as this – where the defendant asserts a qualified-immunity defense against a claim that she submitted false statements in support of an arrest warrant.  In those cases, the

_____

[4] The Sixth Circuit varies in applying either a two-part or three-part test to determine whether government officials are entitled to qualified immunity.  *Browning v. Pennington*, No. 09-CV-880-KKC, 2012 WL 4023758, at *5 (E.D. Ky. Sept. 12, 2012).  Under the two-part approach, the Court considers (1) whether the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred; and (2) whether the violation was of a right that is clearly established.  *Id.*  This two-part test is often used in cases where the violation of a "clearly established" right sufficiently implies that its violation is objectively unreasonable.  *Id.*  In this case, the parties agree that the Court must analyze the facts under the Sixth Circuit's three-part test.  Because the objective reasonableness of Defendant Rigney's actions is outcome determinative, the Court concurs that the three-part test will increase the clarity of the proper analysis.

plaintiff is required to establish: "(1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). If the plaintiff meets this burden, the defendant may still be entitled to qualified immunity if she can demonstrate that her actions were objectively reasonable in light of clearly established law. *See Scott v. Kelley*, No. 2010-77(WOB-CJS), 2012 WL 479896, at *8-9 (E.D. Ky. Feb. 14, 2012) (assuming the plaintiff satisfied its burden of proving the *Vakilian* elements, the Court then considered whether the officer's actions were objectively unreasonable in light of clearly established law); *Butts v. City of Bowling Green*, 374 F. Supp. 2d 532, 542-44 (W.D. Ky. 2005) (same).

> **(a)    Plaintiff has failed to meet his burden of making a substantial showing that Defendant showed a reckless disregard for the truth.**

Plaintiff does not define his burden of proof under the first prong, but merely proceeds on the assumption that he has satisfied this burden by alleging that Defendant omitted various facts from her Complaint and Affidavit ("Affidavit"). This assumption, however, is mistaken. Instead, Plaintiff must establish a "*substantial* showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth." *Vakilian*, 335 F.3d at 517 (emphasis added). When a plaintiff argues that the officer made an omission in reckless disregard for the truth, as Plaintiff does here, he must establish that the officer "withh[eld] a fact in her ken that any reasonable person would have known . . . is the kind of thing the judge would wish to know." *Peet v. City of Detroit*, 502 F.3d 557, 570 n.3 (6th Cir. 2007) (internal citations omitted).

Plaintiff alleges that Defendant made the following omissions in her warrant application:  (1) the child suffered from psychological problems and was hospitalized for psychological treatment on one occasion; (2) there was no medical evidence to corroborate the child's anal sodomy allegations; and (3) it would have been "impossible" for the alleged sexual abuse to have occurred in Plaintiff's office simply because of its close proximity to other offices.   Each omitted fact will be addressed in turn.

J.S.'s psychological problems, including his extended in-patient psychological treatment, would not have benefitted the state court judge in his probable cause determination.  A victim's statement alone generally will suffice to establish probable cause "unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation."  *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (internal citations and quotations omitted).  Even making all reasonable inferences in favor of Plaintiff, alleging that J.S. generally suffers from psychological and emotional problems does not indicate that J.S. was lying or mistaken.  There are absolutely no allegations in the Amended Complaint that J.S.'s psychological problems caused him to lie or otherwise distort the truth.  Therefore, a reasonable person would not know that J.S.'s general psychological problems are the kind of information a judge would want to know in evaluating J.S.'s credibility.

Similarly, a reasonable person would not know that a judge would want to consider the second omitted fact – that the child victim presented no physical injuries consistent with anal sodomy – in a probable cause determination of sexual abuse.  Because "penetration of the anus may or may not cause injury," an unremarkable physical examination does not

13

establish that the child's allegations were false.  John E.B. Myers, *Expert Testimony in Child Sexual Abuse Litigation: Consensus and Confusion*, 14 U.C. Davis Journal of Juvenile Law & Policy 1, 20 (Winter 2010). Therefore, it was reasonable to believe that J.S.'s unremarkable physical examination would not benefit the judge in determining probable cause.

The final omitted fact – that it would have been "impossible" for the alleged sexual abuse to have occurred in Plaintiff's office simply because of its close proximity to other offices – was also reasonably omitted.  As an initial matter, the Court need not accept as true Plaintiff's assertion that it would have been "impossible" for the alleged sexual to have occurred. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (courts "need not accept as true . . . unwarranted factual inferences.").  The Court will, however, consider as true Plaintiff's allegation that his office was in close proximity to other offices.  Although this fact might show that it would be more difficult to commit the alleged sexual abuse, it by no means indicates that it would have been entirely impossible for the alleged abuse to have occurred.   Therefore, any reasonable person would not know that this was the type of fact a judge would want to know in making a probable cause determination.    In the end, a reasonable person would not have known that the omitted facts, even considered in their totality, were the type of facts that should be disclosed to a judge, or that a judge would want to consider.  In submitting probable cause affidavits, officers are required to "provide magistrates with the underlying facts and circumstances that support the [officer's] conclusions." *Illinois v. Gates*, 462 U.S. 213, 276 (1983).  The officer is not,  however, required to include all exculpatory evidence in the affidavit. *Gregory v. City of Louisville*, 444 F.3d 725, 762 (6th Cir. 2006) (Siler, J., dissenting); *Mays v. City of Dayton*, 134 F.3d

809, 816 (6th Cir. 1998).  Requiring otherwise would "place[ ] an extraordinary burden on law enforcement officers, compelling them to follow up and include in a warrant affidavit every hunch and detail of an investigation in the futile attempt to prove the negative proposition that no potentially exculpatory evidence had been excluded."  *Mays*, 134 F.3d at 816.  And because officers are not required to disclose all exculpatory information, they may only be sued under § 1983 for omitting exculpatory information from a probable cause affidavit if the omission showed reckless disregard for the truth.  Plaintiff has simply failed to meet that standard here.  Accordingly, Plaintiff is entitled to qualified immunity on Plaintiff's unlawful arrest claim.

### (b) Defendant's actions were objectively reasonable in light of clearly established law.

Defendant is also entitled to qualified immunity because her actions were objectively reasonable in light of clearly established law.  "Whether an action was 'objectively reasonable' in light of clearly established rules is 'a fact-specific, case-by-case' inquiry focused on 'whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene.'" *Marcils v. Township of Redford*, 693 F.3d 589, 598 (6th Cir. 2012) (quoting *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011)).  Stated another way, the determinative question is whether Defendant knew or should have known that her conduct violated Plaintiff's established rights.

"[I]t is well established that any arrest without probable cause violates the Fourth Amendment." *Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003).  More specifically, it is well established that an officer violates an individual's Fourth Amendment

right if "a reasonably well-trained officer in [Defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345 (1986). Finally, it is well established that offering false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest violates the Fourth Amendment. *Vakilian*, 335 F.3d at 517.

Here, Defendant relied solely on J.S.'s allegations to establish probable cause. On February 6, 2009, Defendant was contacted by the Cabinet for Health and Family Services and advised of J.S.'s initial disclosure. (Doc. # 1-2). On February 11, 2009, Defendant observed a forensic interview of J.S. conducted at the Children's Advocacy Center, where the child disclosed that "[Plaintiff] had put his private part in his butt . . . [and] that this took place in [Plaintiff's office]." (*Id.*). The child also stated that "[Plaintiff] pulled down the back of his pants while he was near a blue round table . . . [and Plaintiff] was squeezing [the child's] private part." (*Id.*). Approximately two-and-a-half months later, Defendant submitted her Affidavit for a warrant despite knowing that J.S. suffered from psychological problems and that there was no physical evidence to corroborate the allegations. The question, then, is whether a reasonable officer would have believed that there was probable cause to arrest Plaintiff based on clearly established law.

The Supreme Court has explained the probable-cause standard as follows:

[T]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully reduced to a neat set of legal rules. The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. We have stated, however, that the substance of all the definitions of probable cause is reasonable ground for belief of guilt.

*Maryland v. Pringle*, 540 U.S. 360, 370-71 (2003) (internal quotations and citations omitted).

      With the probable-cause standard in mind, it is prudent to begin with the elements of the suspected crime – sexual abuse in the first degree – to determine whether the facts known by Defendant at the time she submitted her affidavit satisfied those elements. Under Kentucky law, a person is guilty of sexual abuse in the first degree if "He . . . subjects another person to sexual contact who is incapable of consent because he or she . . . is less than twelve (12) years old . . . ." K.R.S. § 510.110(1)(b)(2).  J.S.'s allegations provided sufficient information to meet each of these elements – J.S., a seven-year-old child, alleged that Plaintiff sodomized him and fondled his penis.

      Because J.S.'s allegations provided sufficient evidence to establish the elements of sexual abuse in the first degree, the question becomes whether an officer could reasonably rely on J.S.'s allegations alone to establish probable cause.  As a general rule, "a law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest." *Ahlers*, 188 F.3d at 370.  The Sixth Circuit has specifically held that an alleged victim's "accusation that she had been sexually assaulted . . . *, standing alone*, was sufficient to establish probable cause." *Id.* (emphasis added). However, an officer cannot rely on a victim's statement alone if " at the time of the arrest, there is an apparent reason for the officer to believe that the [victim] was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Id.* (internal quotations omitted).   Aside from J.S.'s allegations, Defendant also knew that J.S. was only seven years old, had psychological problems, and presented no physical injuries at the time she submitted her Affidavit.

However, a reasonable officer would not have known, based on clearly established law, that any of these facts would prevent the officer from relying on a seven-year-old child's allegations of sexual abuse.

Beginning with the alleged victim's age, it is not clearly established that an officer cannot rely on the uncorroborated statement of a seven-year-old child-victim to establish probable cause. In fact, the law is far from settled, and appears to largely depend on the age of the child and whether the disclosure was made in the presence of the officer. For example, the Tenth Circuit has held that an officer reasonably relied upon the uncorroborated statement of a ten-year-old child to establish probable cause. *See Gerald M. v. Conneely*, 858 F.2d 378, 380-81 (7th Cir. 1988). In apparent agreement, the Eleventh Circuit has held that "[t]here is no basis for holding that police officers cannot depend on the uncorroborated evidence of a child victim of sexual abuse for the request for a warrant." *Lowe v. Aldridge*, 958 F.2d 1565, 1571 (11th Cir. 1992). However, the Sixth Circuit recently stated: "[w]e are not aware . . . of any situation in which the uncorroborated hearsay statement of a child as young as three, standing alone, has been considered sufficient to establish probable cause." *United States v. Shaw*, 464 F.3d 615, 624 (6th Cir. 2006). Likewise, the Tenth Circuit has held that "unsubstantiated double-hearsay originating from a two-year-old, standing alone, does not give rise to probable cause." *Cortez v. McCauley*, 478 F.3d 1108, 1118 (10th Cir. 2007). Based on this law, the Defendant could have relied solely on J.S.'s uncorroborated allegations to find probable cause, particularly because Defendant observed J.S. make the second disclosure. However, even if Defendant could not rely solely on J.S.'s allegations because of the child's age, the law is not clearly established on that point.

The remaining facts known to Defendant – that J.S. generally suffered from psychological problems and that J.S. did not present physical injuries – do not cast doubt on the veracity of J.S.'s allegations to the point that a reasonable officer would have certainly believed that J.S. was lying.  There are no allegations that J.S.'s psychological problems caused him to lie or otherwise misinterpret his experiences.  Furthermore, a victim of sexual abuse often presents no injuries upon physical examination.  *See* John E.B. Myers, *Expert Testimony in Child Sexual Abuse Litigation: Consensus and Confusion*, 14 U.C. Davis Journal of Juvenile Law & Policy 1, 20 (Winter 2010). Therefore, it is not unreasonable for an officer to believe a child's allegations of sexual abuse despite a lack of physical evidence.  Accordingly, for all of these reasons, it was objectively reasonable, in light of clearly established law, to believe that probable cause existed based on J.S.'s allegations, despite the other evidence known to Defendant.

Contrary to this conclusion, Plaintiff argues that the Sixth Circuit's decision in *Ollis v. Woods*, 810 F.2d 202 (1986) (table), compels the Court to find that Defendant's actions were not objectively reasonable in light of clearly established law.  In *Ollis*, two social workers and a police detective were investigating the sexual abuse of a seven-year-old child.  *Id.* at *1.  The child suffered from gonorrhea, as did both of the child's parents.  *Id.* On several occasions the child implicated her father.  *Id.*  However, on at least one occasion, the child implicated another individual, Charles Ollis.  *Id.*  The detective then submitted an affidavit seeking an arrest warrant for Ollis based solely on the child's allegation.   The detective's affidavit, however, omitted information about the gonorrhea evidence of that the child had previously implicated her father.  *Id.*  Thereafter, Ollis was arrested, but the charges were subsequently dropped.  *Id.*

19

Ollis then filed a § 1983 unlawful arrest claim against the detective, alleging that the detective withheld information in seeking an arrest warrant. *Id.* The district court held that the detective was entitled to qualified immunity despite his failure to disclose the omitted evidence. *Id.* On appeal, the Sixth Circuit reversed the district court's decision. *Id.* at *4. The *Ollis* Court stated that "it is unclear whether a police officer or witness swearing out a warrant has a duty to present all possibly exculpatory evidence to the magistrate at a probable cause hearing." *Id.* at *3. Nonetheless, the court ruled that "a reasonable officer in [the detective's] position would have known that his affidavit failed to establish probable cause" because the child had previously implicated her father, and physical evidence corroborated that allegation. *Id.*

Despite Plaintiff's contention, *Ollis* is clearly distinguishable from the facts herein. Here, J.S. never implicated any other individual and there was no physical evidence to suggest that anyone else sexually abused J.S. Moreover, unlike in *Ollis*, in this case there was no evidence to either corroborate or impeach J.S.'s allegations. In short, the omitted information at-issue here did not detract from J.S.'s veracity such that a reasonable officer would believe that she could not rely on J.S.'s allegations alone to seek an arrest warrant.

### (2)   Defendant was under no obligation to conduct further investigation

Plaintiff alleges that Defendant recklessly disregarded the truth by failing to conduct a complete investigation, and therefore violated his Fourth Amendment right to be free from an unreasonable arrest. Specifically, Plaintiff contends that Defendant's investigation was incomplete because she failed to interview "[Plaintiff] despite [Plaintiff] appearing alone at the police station and expressing his desire to be interviewed," and also failed to interview "faculty at the school despite J.S.'s allegations that the sodomy took place over a full year

20

and it occurred in [Plaintiff's] office . . . ." (Doc. # 66 at 10).  Plaintiff relies on two cases – *Ahlers v. Schebil*, 188 F.3d 365 (1999) and *BeVier v. Hucal*, 806 F.2d 123 (7th Cir. 1986) – to support this theory of liability.   However,  Plaintiff's reliance on these cases is misplaced; each case demonstrates that Defendant's actions were objectively reasonable in light of clearly established law.

In *Ahlers v. Schebil*, the Sixth Circuit held that "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused."  188 F.3d at 371.  The court first found that a victim's "accusation that she had been sexually assaulted . . . , standing alone, was sufficient to establish probable cause . . . ."  *Id.*  Therefore, the officers could not be liable for failing to continue their investigation and discover evidence which would have exculpated the alleged perpetrator.  *Id.* at 372.  Notably, the *Ahlers* Court also found that an arresting officer is under no obligation to give credence to a suspect's story.  *Id.*

The *Ahlers* Court was also careful to distinguish this rule – that no further investigation need be conducted once probable cause is established – from cases where officers made hasty, unsubstantiated arrests, and were found liable for unlawful arrests. In those cases, the officers were *in the process* of making a probable cause determination and had information that was both inculpatory and exculpatory.  *Id.* (citing *Kuehl v. Burtis*, 173 F.3d 646, 651 (8th Cir. 1999); *Sevigny v. Dicksey*, 846 F.2d 953, 957-59 (4th Cir. 1988); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986)).  Without conducting further investigation, the officers simply concluded that probable cause existed.  *Id.*

*BeVier v. Hucal*, 806 F.2d 123 (7th Cir. 1986), another case relied upon by Plaintiff, applied identical principles of law.  In *Bevier*, officers were patrolling a fairground after

21

learning that children camping in the area had been taken to the hospital earlier that day. *Id.* at 125.  During their patrol, the officers found two children sitting in direct sunlight, in 100 degree heat.  *Id.*  One of the children was sitting in a swing with his head slumped to the side.  *Id.*  Both children were "filthy" and their skin was sunburned.  *Id.*  One of the children had a diaper rash and had apparently been taken to the hospital earlier in the day because he was urinating blood.  *Id.*  Without asking any questions of nearby-witnesses or conducting any further investigation, the officers arrested the father for child neglect.

The father ultimately sued the officers for unlawful arrest, alleging that they did not have probable cause to arrest him.  *Id.*  The jury returned a verdict in favor of the father, and the Seventh Circuit affirmed.  *Id.* at 126.  The  Circuit found that the facts on which the officer relied to find probable cause did not sufficiently satisfy each element of child neglect – specifically, the intent element.  As Plaintiff has quoted, the Circuit stated:

> A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest.  Reasonable avenues of investigation must be pursued especially when, as here, it is unclear whether a crime had even taken place.

*Id.*  at 128.  However, the Court went on to state: "In *Gramenos v. Jewel Campanies, Inc.*, 797 f.2d 432, 437-42 (7th Cir. 2986), we held that an officer who has established cause on every element of the crime need not continue investigating to check out leads or test the suspect's claim of innocence."  *Id.*

Applying that law, the Seventh Circuit held that the officers should have conducted further investigation because they did not have sufficient evidence to establish every element of child neglect.  *Id.*  The court stated: "here . . . without doing some further investigation Hucal had no information on the [parent's] intent, an essential element of child neglect, and no way to tell whether the children's situation was attributable to the [parent's]

22

decision." *Id.* The Circuit also found that the officer could have easily obtained information on the intent element from at least four sources, but chose not to. *Id.*

Pursuant to *Ahlers* and *Bevier*, it was objectively reasonable for Defendant to seek an arrest warrant without conducting any further investigation. As the Court has already held, it was objectively reasonable for Defendant to believe that J.S.'s allegations alone established probable cause for Plaintiff's arrest – a reasonable officer would have found J.S.'s statements reliable based on clearly established law, and the statements sufficiently established each element of the crime. Once Defendant reasonably believed she had probable cause, she was under no duty to investigate further by interviewing teachers at the school. *See Ahlers*, 188 F.3d at 371. Moreover, as *Ahlers* makes explicitly clear, Defendant was under absolutely no duty to interview Plaintiff. *See id.* ("In fact, law enforcement is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause."). Accordingly, Defendant is entitled to qualified immunity on Plaintiff's wrongful arrest claim.

### E.    Plaintiff has pled a viable retaliatory arrest claim

In Count Nine of the Amended Complaint, Plaintiff alleges Defendant violated his First Amendment rights by filing her probable cause Affidavit in retaliation for Plaintiff appealing Social Worker Campbell's finding of substantiated abuse. The elements of a retaliatory arrest claim remain unclear, but at a minimum, Plaintiff must prove: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was

motivated at least in part by Plaintiff's protected conduct. *Kennedy v. City of Villa Hills*, 635 F.3d 210, 217 (6th Cir. 2011). Defendant argues that Plaintiff must also prove a lack of probable cause as an element of the retaliatory arrest claim, which, according to Defendant, Plaintiff has failed to do. Additionally, Defendant asserts that the Amended Complaint does not allege any facts to demonstrate retaliatory intent.

Defendant relies on the Supreme Court's recent decision in *Reichle v. Howards*, 132 S.Ct. 2088 (2012), for the proposition that "a plaintiff alleging a retaliatory arrest [is required] to show that the defendant officer lacked probable cause or his or her claim will fail." (Doc. # 67 at 7). Plaintiff however misstates the holding in *Reichle.* Instead, the Supreme Court addressed confusion among the Circuits created by its prior ruling in *Hartman v. Moore*, 547 U.S. 250 (2006). In *Hartman*, the Court held that "a plaintiff cannot state a claim of *retaliatory prosecution* in violation of the First Amendment if the charges were supported by probable cause." *Reichle*, 132 S.Ct. at 2094 (emphasis added). Some Circuits, including the Sixth Circuit, applied *Hartman*'s holding to retaliatory arrest claims, holding that "*Hartman* required a plaintiff alleging retaliatory arrest to show that the defendant officer lacked probable cause." *Id.* (citing *Barnes v. Wright*, 449 F.3d 709, 720 (2006)). Other circuits, including the Tenth Circuit, refused to apply *Hartman*'s holding to retaliatory arrest claims, instead finding that an officer cannot be shielded from liability for a retaliatory arrest even if the arrest is otherwise supported by probable cause. *See Howards v. McLaughlin*, 634 F.3d 1131, 1148 (10th Cir. 2011).

The Court stated: "[W]e do not suggest that *Hartman*'s rule in fact extends to arrests." *Reichle*, 132 S.Ct. at 2096. That is, an officer may still be liable for a retaliatory arrest even if the arrest is otherwise supported by probable cause. *See id.* However, the

24

Court also recognized that this rule was not clearly established after *Hartman* and, therefore, the officer-petitioner was entitled to qualified immunity. In the case at hand, because Defendant has not raised the qualified-immunity defense to this claim, but has only argued that the arrest was supported by probable cause, the Court will not consider whether it was objectively reasonable for Defendant to file her Affidavit in light of the clearly established law. Instead, the dispositive issue is whether Plaintiff has alleged sufficient facts to establish a *prima facie* retaliatory arrest claim. More specifically, Defendant asserts that Plaintiff has failed to allege any facts that demonstrate retaliatory intent.

A plaintiff is not required to establish retaliatory intent with direct proof. *Kennedy*, 635 F.3d at 218. Rather, circumstantial evidence of the officer's motive alone may be sufficient. *Id.* In the employment context, the Sixth Circuit has described the plaintiff's burden as "minimal" during the *prima facie* stage, "requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence . . . ." *Nguyen v. City of Cleveland*, 229 F.3d 559, 565-66 (6th Cir. 2000) (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)). Although the law is not clearly defined in this area, it appears that evidence of close proximity in time between the adverse action and the protected activity coupled with other circumstantial evidence is sufficient to prove retaliatory intent. *See Moore v. KUKA Welding Systems*, 171 F.3d 1073, 1080 (6th Cir. 1999). In any event, the Sixth Circuit cautions that "'claims involving proof of a defendant's intent seldom lend themselves to summary disposition.'" *Kennedy*, 635 F.3d at 218 (quoting *Holzmer v. City of Memphis*, 621 F.3d 512, 525-26 (6th Cir. 2010)).

25

With this "minimal" burden in mind, the Court finds that Plaintiff's Amended Complaint alleges sufficient facts to establish retaliatory intent. According to the Amended Complaint, Defendant and Social Worker Campbell were friends before the investigation began, and they "bypassed normal procedure so they could be assigned together in this case." (Doc. # 66 at 12-13). On February 10, 2009, Defendant observed J.S.'s interview at the Children's Advocacy Center where the child disclosed that he had been anally sodomized by Plaintiff on multiple occasions. On March 19, 2009, Social Worker Campbell filed her finding of substantiated abuse. Plaintiff appealed that finding on March 30, 2009. Sometime later in April, Defendant learned of Plaintiff's appeal. Only then, without discovering any additional inculpatory information, did Defendant file her Affidavit seeking an arrest warrant. Because Plaintiff's burden is only "minimal" at this *prima facie* stage, Plaintiff has alleged enough circumstantial evidence to demonstrate that Defendant filed her Affidavit in retaliation of Plaintiff's appeal. Accordingly, Defendant's motion to dismiss this claim is denied.

### F.  Defendant has absolute immunity to the state-law claims against her in her official capacity

Sovereign immunity is "an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001). When a public official is sued in her official capacity, the absolutely immunity from suit afforded to the state is extended to the public official because the state is deemed the real party against which relief is sought. *Id.* at 518. Thus, Defendant is entitled to absolute immunity on all state-law claims asserted against her in her official capacity.

26

### G.      State-law claims against Defendant in her individual capacity

Plaintiff asserts two state-law claims against Defendant: the tort of outrage and "negligent investigation."[5]  Defendant has moved to dismiss each of these claims, arguing that Plaintiff has failed to set forth sufficient facts to establish a *prima facie* claim on either count.  Additionally, Defendant contends that she is entitled to qualified official immunity pursuant to *Yanero v Davis*, and statutory immunity pursuant to K.R.S. § 620.050.

### (1)      Plaintiff has waived opposition to Defendant's Motion to Dismiss the tort of outrage claim

In Count 7 of his Amended Complaint, Plaintiff asserts a claim for the tort of outrage (i.e. intentional infliction of emotional distress).  Plaintiff does not assert any factual allegations in Count VII, but instead incorporates by reference each of the previously alleged factual allegations.  Defendant has moved for dismissal on this count, arguing that the Amended Complaint fails to state a cognizable intentional infliction of emotional distress claim.  In his Response to the Motion to Dismiss, Plaintiff failed to address this claim or respond to Defendant's argument.   Therefore, Plaintiff has waived opposition to Defendant's motion to dismiss this claim, and this claim is dismissed.  *See Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (recognizing that a party's lack of response to a motion or argument therein is grounds for the district court to assume opposition to the motion is waived, and grant the motion); *Scott v. Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (unpublished table decision) (affirming district court's grant of defendant's unopposed motion to dismiss and noting that "if a

---

[5]  It was not readily apparent from the face of the Amended Complaint whether Plaintiff asserted the "negligent investigation" claim under federal or state law.  However, in his Response to the Motion to Dismiss, Plaintiff clarifies that the negligent investigation claim is brought under state law; the Court will analyze it accordingly.

plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem plaintiff to have waived opposition to the motion.").

Alternatively, Plaintiff has failed to state a claim for which relief may be granted. Kentucky has adopted the Restatement (Second) of Torts § 46(1), which provides:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004). Kentucky also considers the tort of outrage a "gap-filler," meaning that it was not intended to supplant or duplicate existing statutory or common-law remedies. *Childers v. Geile*, 367 S.W.3d 576, 582 (Ky. 2012). Rather, a claim of outrage is only actionable when the actor's intentional or reckless conduct is aimed *solely* at causing emotional distress. *Id.* As a gap-filler tort, the Kentucky Supreme Court recognizes that the tort is not properly pled when "the facts support a claim for a more traditional personal injury tort with mental pain and suffering as part of the damages rather than severe emotional distress caused by outrageous conduct." *Id.* at 582-83. In other words, the Court must consider whether the emotional distress was the "gravamen" of Defendant's conduct. *Id.; See also Crisalli v. Willis Re Inc.*, 560 F.Supp.2d 512, 514 (E.D. Tex. 2006) ("Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available.").

Here, the gravamen of Plaintiff's complaint is the violation of his First and Fourth Amendment rights. Because emotional distress damages are available for each of those claims, *see Chatman v. Slagle*, 107 F.3d 380, 384-85 (6th Cir. 1997), Plaintiff's outrage claim is inappropriate unless Plaintiff can demonstrate that Defendant took the action solely

to inflict emotional distress. *Childers*, 367 S.W.3d at 583. The Amended Complaint does not make this allegation. Instead, it alleges that Defendant also filed her Affidavit to retaliate against Plaintiff for exercising his First Amendment rights. Accordingly, Plaintiff's outrage claim is dismissed on the alternative ground that it fails to state a claim for which relief may be granted.

### (2)   Plaintiff's negligent investigation claim fails because Defendant did not owe Plaintiff a duty of care

Plaintiff's "negligent investigation" claim begins with the general proposition that "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." (Doc. # 66 at 15). From there, Plaintiff apparently assumes that officers owe suspects a duty to investigate alleged criminal activity with reasonable care. Plaintiff offers no support for this proposition. Plaintiff then contends that Defendant breached this duty to investigate by, *inter alia*, failing to interview him despite his repeated requests, and by failing to interview any faculty members at the school. However, Plaintiff's claim is not actionable because police officers do not generally owe criminal suspects a duty to conduct investigations with reasonable care.

"[T]he existence of a duty of care to the plaintiff . . . is purely a question of law for the court." *Lee v. Farmer's Rual Elec. Co-Cop. Corp.*, 245 S.W.3d 209, 218 (Ky. App. 2007) (quoting *James v. Meow Media, Inc.*, 300 F.3d 683, 691-92 (6th Cir. 2002), *cert. denied*, 537 U.S. 1159 (2003) (interpreting Kentucky law)). Kentucky courts have refused to hold police officers to a universal duty of care, as Plaintiff has requested the Court to do here. *See, e.g., City of Florence v. Chipman*, 38 S.W.3d 387, 393 (Ky. 2001). Instead, in order to establish a negligence claim against a public official under Kentucky law, "'the complaint

29

must allege a violation of a special duty owed to a specific identifiable person and not merely the breach of a general duty owed to the public at large.'" *James v. Wilson*, 95 S.W.3d 875, 893 (Ky. App. 2002) (quoting *Fryman v. Harrison*, 896 S.W.2d 908, 910 (Ky. 1995)).  More specifically, Kentucky courts have consistently held that police officers only owe a duty of care to specific individuals if there is a "special relationship" between the officer and individual.  *City of Florence v. Chipman*, 38 S.W.3d 387, 392 (Ky. 2001); *Ashby v. City of Louisville*, 841 S.W.2d 184 (Ky. App. 1992).  However, Kentucky has yet to address the specific question presented here – whether a police officer owes a suspect the duty to investigate allegations of criminal activity with reasonable care.

Although Kentucky law is seemingly silent on the specific issue presented herein, other jurisdictions have uniformly refused to recognize a tort of negligent investigation.  *See Turner v. Taylor*, No. 7:09-cv-02858-JMC, 2011 WL 3794086, at *9 (D.S.C. Aug. 25, 2011) (holding that officers owe a duty to the public to detect and investigate crime, but owe no duty to individuals for negligent investigation); *Fernander v. Bonis*, 947 So.2d 584, 590 (Fl. Dist. Ct. App. 2007) ("[Plaintiff] has failed to establish that the police owed him a duty to conduct the polygraph examination of Butler in a non-negligent manner."); *Pritchett v. City of Homestead*, 855 So.2d 1164, 1165 (Fl. Dist. Ct. App. 2003) (recognizing that "negligent conduct of police investigations does not give rise to a cause of action because the duty to protect citizens and enforce the law is one owed generally to the public."); *Waskey v. Municipality of Anchorage*, 909 P.2d 342, 344 (Alaska 1996) (following the conclusion of "numerous cases from other jurisdictions which have declined to recognize the duty to conduct criminal investigations in a non-negligent manner and have therefore refused to recognize a tort of negligent investigations of a crime.");  *Flones v. Dalman*, 502 N.W.2d

725, 729 (Mich. App. 1993) ("[D]efendant's duty to the public is to detect and investigate crime; no duty is owed to [arrestee] as individual); *Wimer v. Idaho*, 841 P.2d 453, 455 (Idaho Ct. App. 1992) (finding that there is no cause of action against officer for negligent investigation).[6] Because these cases appear to be consistent with Kentucky's general approach that police officers do not owe a duty of care to individuals, the Court finds each of these cases persuasive. As such, Defendant did not owe Plaintiff a duty to reasonably investigate J.S.'s sexual abuse allegations; therefore, Plaintiff's negligent investigation claim is dismissed.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) Defendant's Motion to Dismiss (Doc. # 63) all claims against her in her official capacity is **GRANTED**. Those claims are hereby **DISMISSED WITH PREJUDICE**;

(2) Defendant's Motion to Dismiss (Doc. # 63) all claims against her in her individual capacity is **GRANTED** as to Counts 1, 5 and 7. Those claims are hereby **DISMISSED WITH PREJUDICE**;

(3) Defendant's Motion to Dismiss (Doc. # 63) all claims against her in her individual capacity is **DENIED** as to Count 9.

---

[6] At least one jurisdiction recognizes that a police officer may be liable if she is grossly negligent in her investigation of a crime. *Cullison v. City of Peoria*, 584 P.2d 1156 (Ariz. 1978). However, gross negligence in this context requires proof that the officer "had reason to believe the information on which [she] based [the] arrest . . . was not trustworthy." *Id.* at 1158. Even if Kentucky followed this approach, the Amended Complaint fails to plead fact to meet this standard. *See supra* Section VIII(D). Furthermore, Plaintiff's allegation that Defendant's conduct was "grossly negligent" does not satisfy the standard as this is a legal conclusion that need not be accepted in considering a motion to dismiss pursuant to Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

This 18th day of December, 2012.



Signed By:

*David L. Bunning*

United States District Judge

B:\DATA\Opinions\Covington\2010\10-51 MOO granting & denying in part D's MTD.wpd